J. J. EGAN AND H. GUNN, comprising the firm of Egan
   & Gunn *vs.* E. M. BREWER, ELIZA BREWER, N.
   R. RICE, and the minor heirs of Chas. Brewer.

EXCEPTIONS.

HEARING, MARCH 20, 1893.       DECISION, APRIL 20, 1893.

JUDD, C.J., BICKERTON AND FREAR, JJ.

The declaration was for Trespass in Case, by a tenant against a land-
lord, for gratuitous repairs of a tenement unskillfully and negli-
gently done. The proofs and findings of fact supported an action
upon a covenant that the building was fit and suitable for the in-
tended use of it by the plaintiffs. Held, there was a variance be-
tween the declaration and proofs and the judgment is reversed.

OPINION OF THE COURT, BY JUDD, C.J.

The declaration in this case is in "Trespass in Case," and
corresponds very nearly with the form given in 2 Chitty's
Pleadings, p. 537, for a declaration in tort, "By a tenant, not
bound to repair, against a landlord who had commenced re-
pairing, for not doing repairs in a proper manner." After
stating that plaintiffs claim of defendants $1000 for damages
resulting to them for injury done by defendants to the prop-
erty, *i. e.*, the goods, wares and merchandise, chattels and
effects of plaintiffs in April, 1892, in the store of plaintiffs on
Fort street, Honolulu, the declaration proceeds, "for that
plaintiffs were in April, 1892, tenants to the defendants of a
certain messuage situate on the Waikiki side of Fort street,
in Honolulu, for a term of years, and the said messuage was
dilapidated and out of repair, and in part not fit for occupa-
tion, and the defendants, on or about April, 1892, entered

upon and in part performed certain repairs necessary and proper to be done, and which the plaintiffs were not bound or under any just or legal obligation to do or perform; yet the defendants did not use due care, skill or diligence in performing or completing the said repairs, but wrongfully neglected and refused so to do, whereby at said times the said messuage was greatly and unnecessarily injured and damaged and its use and occupation impaired, and the goods, wares and merchandise, chattels and effects of plaintiffs greatly and unnecessarily injured, damaged and lost, to the damage of the plaintiffs in the sum of $1000," etc.

The second count is similar, and avers particularly that defendants did not use due care, skill or diligence in performing and completing the repairs (a leak in the roof), and the roof leaked and rain and water came into the said messuage and upon the goods, etc.

The case was heard by Bickerton, J., who, the jury being waived, rendered judgment for plaintiffs for $430.10, to which, as well as to certain rulings made during the trial, exceptions are taken to this Court by defendants.

After the evidence of plaintiff Gunn was in, and the lease under which the plaintiffs hold the tenement in question had been introduced and filed, a written agreement was tendered by plaintiffs between them and defendants for the building and leasing of the said tenement. This was admitted against defendants' objection.

The declaration in this case being for defendants' negligence in repairing the leak in the roof, we fail to see how the antecedent contract to erect the building was relevant. The lease already in evidence was the last contract between the parties, and it created the relation between them of landlord and tenant, and that was all that could be shown between them in accordance with the declaration. If the action had been based upon a covenant of defendants either expressed or implied, that the building in question was fit and suitable, and was to be kept fit for the intended use of it by plaintiffs, the agreement to build and lease would have been competent

evidence. The form of the action chosen is not based upon any obligation of defendants to repair, and none is averred in the declaration. The Court below inadvertently misconceived the action. In its opinion it says: "This is an action to recover damages resulting to plaintiffs from a defective skylight in the store leased by them from defendants," and, after reciting the agreement to build and lease and the lease thereafter made, and that the plaintiffs went into possession, says: "Soon after, it rained and the skylight leaked, damaging some goods. Defendants' agent was notified, and some work was done on the skylight, but when the next rain came it leaked worse than ever, and a large quantity of goods were damaged. More work was done at various times on the said skylight, and eventually it was removed and a new one put in, on a new plan, raised above the roof. From that time on there has been no leak." * * * "It seems to me that this case cannot be treated in the same way as if this had been an old building that might require repairing. This was a new building, and the plaintiffs were the first occupants and had a right to presume that roof and skylight were tight and water-proof. It would appear from the evidence that the construction of this skylight was faulty and could never have been made water tight, and therefore the building could not be considered complete and finished." The evidence fully sustains this finding of fact, and if the declaration had been for damages for breach of the agreement to build, or upon a covenant express or implied that the building should be finished, fit and suitable for plaintiffs' intended use, this evidence would apparently have justified a judgment against defendants.

The counsel for plaintiffs introduced evidence to sustain a case of implied covenant on the part of a lessor that the building should be finished and fit for use as a store, citing in his brief *La Farge vs. Mansfield*, 31 Barb., 345–8. He also takes the position that the defendants having undertaken to repair are liable for the injury complained of. An architect, Ripley, was called by plaintiffs. He says, "I was convinced

upon examining the roof and skylight that it could not be made water tight in the way that they had attempted to do it. It was not water tight because it (the skylight) was laid flat down on the roof, and the water on the roof turned down on to it to flow across it, and the skylight being so flat the water did not flow off properly. The skylight had to be taken off and reset at a convenient pitch and tin around it. The attempts to patch it did not make it leak worse. I doubt if a skylight put in in the way I first found that one, could be made water tight." The new skylight was put in by defendants. The plain conclusion from this evidence is that the leak and damage was owing to the original faulty construction of the skylight.

Plaintiffs' counsel also cite *Gill vs. Middleton*, 105 Mass. 477, "The landlord although not bound to make repairs voluntarily proceeded to do so and was held liable for injury received in consequence of such repairs not being done in a proper manner." This statement of the case is taken from plaintiffs' brief. But a fuller statement of the case is necessary. It was an action for damages for personal injuries to a person through falling into the vault of a privy. Plaintiff was a tenant of defendant. The privy was out of repair and defendant promised to put it in repair and made some repairs on it and told plaintiff he had made it safe and she need not fear to use it. The floor gave way and damage resulted. The evidence was that the repairs were unskillfully made and with unsuitable materials. There was no obligation on the part of defendant to make repairs. The Court say, "A landlord is under no obligation to make repairs, unless such a stipulation makes a part of the original contract; and any promise to do so, founded merely on the relation of the parties, and not one of the conditions of the lease, would be without consideration, and for that reason would create no liability. But although a gratuitous executory contract of that kind would not be binding upon him, he would place himself in a very different position if he should see fit to treat it as binding, and actually enter upon its fulfillment.

\*   \*   It is well settled, that, for an injury occasioned by want of due care and skill in doing what one has promised to do, an action may be maintained against him in favor of the party relying on such promise and injured by the breach of it."

Now if, as was evident, it was the original faulty method of construction of the skylight that allowed the water to go through and damage plaintiffs' goods, and not the attempt of the defendants to patch it up by cement and by replacing some of the flushings, which, as Mr. Ripley says, did not make it leak any worse, how can the declaration for gratuitous repairs by a landlord warrant a judgment for plaintiffs ?

When plaintiffs ascertained that their evidence disclosed a different liability of defendants, they might have moved for an amendment of their declaration. Not having done so, and the case coming to us on the facts as found by the trial Court, we are compelled to say that the undisputed evidence does not sustain the declaration, and so we reverse the judgment and order a new trial. Other points made by defendants as to their not being liable either for defects in the original plan or construction, or for not having stopped the leak, we do not consider necessary to discuss.

*C. Creighton*, for plaintiffs.

*A. S. Hartwell*, for defendants.

### CONCURRING OPINION OF BICKERTON, J.

I am still of the opinion that the facts developed by the evidence adduced in this case, undoubtedly entitle the plaintiffs to recover and receive damages from the defendants for the damage done to their goods in consequence of the leak in the said defective skylight. But after hearing the arguments of counsel in this Court, and giving the matter careful and mature consideration, I feel satisfied that upon the facts, which I may say are undisputed, the form of action herein was wrong, and that the plaintiffs cannot prevail on such a

declaration. I therefore concur in the conclusions arrived at by the Court in the foregoing opinion.